1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LARRY WIMBERLY,

11              Plaintiff,              No. CIV S-06-289 RRB GGH P

12        vs.

13   COUNTY OF SACRAMENTO, et al.,      ORDER AND

14              Defendants.             FINDINGS & RECOMMENDATIONS

15   _____/

16   I.  Introduction

17              Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

18   42 U.S.C. § 1983.  Pending before the court is defendants' July 12, 2007, motion to dismiss

19   pursuant to Fed. R. Civ. P. 12(b) and 12(b)(6) on grounds that plaintiff failed to exhaust

20   administrative remedies, this action is barred by the statute of limitations and defendant Blanas is

21   entitled to qualified immunity.  For the following reasons, the court orders a hearing as to

22   whether plaintiff has exhausted his administrative remedies.  Defendants' motion should be

23   granted with respect to defendant Blanas.

24   II.  Discussion

25              This action is proceeding on the original complaint filed February 10, 2006,

26   against defendants Sacramento County, Sacramento Sheriffs Department and Sheriff Lou Blanas.

1

1   Plaintiff alleges that he was housed in the Sacramento County Jail as a pretrial detainee from

2   December 2002 for approximately one year.  Complaint, ¶¶ 12, 15.  Plaintiff alleges that

3   defendants' unofficial policy of requiring inmates of the same race to be housed together violated

4   the Equal Protection Clause.

5               A.  Exhaustion of Administrative Remedies

6               42 U.S.C. § 1997e(a) provides that, "[n]o action shall be brought with respect to

7   prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in

8   any jail, prison, or other correctional facility until such administrative remedies as are available

9   are exhausted."  The defendant bears the burden of raising and proving absence of exhaustion.

10  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  "In deciding a motion to dismiss for

11  failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide

12  disputed issues of fact."  Id.

13              In order to exhaust administrative remedies at the Sacramento Jail, an inmate must

14  proceed through three levels of review.  Defendants' Exhibit B, ¶ 2.  The first level of review is

15  informal resolution and provides that an inmate must first direct his problem to the Housing Unit

16  Officer.  Id., ¶ 3.  If the officer does not resolve the issue, the inmate may file a formal written

17  grievance.  Id.

18              The second level of review is a formal written grievance which provides that an

19  inmate must file a grievance within five calendar days of the incident regarding any condition of

20  confinement.  Id., ¶ 4.  Any written grievance must be turned into a Housing Unit Deputy who

21  shall resolve the problem if possible.  Id.  If the Housing Unit Deputy does not resolve the

22  problem, the grievance is forwarded to the Sergeant.  Id.  The Sergeant shall then take any

23  appropriate action necessary to resolve the problem.  Id.  If the Sergeant is unable to resolve the

24  problem, the package is forwarded to the Executive Lieutenant within ten days.  Id.  Once the

25  Executive Lieutenant receives the package, he has five days to respond.  Id.

26  /////

1         The third level of review is an appeal to the jail commander.  Id., ¶ 5.  Once an

2 inmate receives a reply to a written grievance and is dissatisfied with the reply, he may send a

3 written appeal to the jail commander.  Id.

4         In Booth v. Churner, 121 S. Ct. 1819 (2001) the Supreme Court held that inmates

5 must exhaust administrative remedies, regardless of the relief offered through administrative

6 procedures.  121 S. Ct. at 1825.  Therefore, inmates seeking money damages must completely

7 exhaust their administrative remedies.  42 U.S.C. § 1997e(a) provides that no action shall be

8 brought with respect to prison conditions *until* such administrative remedies as are available are

9 exhausted.  McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

10         In support of their claim that plaintiff failed to exhaust his administrative

11 remedies, defendants refer to the declaration of Brendon Hom, the Administrative Sergeant in the

12 Executive Office at the Sacramento County Jail.  Motion to Dismiss, Exhibit B.  Sergeant Hom

13 states that he searched the inmate grievance database at the jail which maintains all inmate

14 grievances filed in the ordinary course of business.  Id., ¶ 7.  His search did not reveal any

15 grievances filed by plaintiff regarding the claims raised in the instant action.  Id.

16         In his opposition filed September 4, 2007, plaintiff alleged that in April and

17 November 2003 he filed grievances regarding the racially discriminatory housing policy.

18 Plaintiff claimed that jail officials refused to respond to these grievances.  On December 6, 2007,

19 the court ordered plaintiff to file a declaration describing in detail these grievances and his

20 attempt to file them.

21         On December 21, 2007, plaintiff filed a declaration stating that his April 2003

22 grievance was collected by Deputy Hatfield, the acting housing officer.  Plaintiff discussed this

23 grievance with Deputy Gilstrap.  The November 2003 grievance was collected by Deputy

24 Weidman, the acting housing officer.  Plaintiff was interviewed by Lieutenant Powell regarding

25 this grievance.  Plaintiff received no written responses to these grievances.

26 /////

1    Because of the factual disputes, the court cannot decide on this record whether

2 plaintiff exhausted his administrative remedies.  According to defendants, plaintiff filed no

3 written grievances.  However, plaintiff claims that he filed two written grievances, apparently at

4 the second level of review.  According to plaintiff and this court's review of the regulations,

5 because the issue was not resolved following his interviews with Deputies Gilstrap and Powell,

6 plaintiff should have received a written response from the Executive Lieutenant.  If these

7 circumstances are true, then plaintiff had exhausted his administrative remedies when he filed

8 this action.  Cf. Underwood v. Wilson, 151 F.3d 292 (5th Cir. 1998) (when a prisoner has

9 undertaken all possible appeals but the prison authorities fail to respond within the required time

10 period, the prisoner has exhausted administrative remedies).

11    In order to determine whether plaintiff exhausted his administrative remedies, the

12 court must hold a hearing where the facts may be further developed.

13    B.  Statute of Limitations/Qualified Immunity

14    *Legal Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)*

15    In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

16 a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

17 it must contain factual allegations sufficient to "raise a right to relief above the speculative

18 level."  Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1965 (2007).  "The pleading

19 must contain something more...than...a statement of facts that merely creates a suspicion [of] a

20 legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice and

21 Procedure § 1216, pp. 235-236 (3d ed. 2004).

22    In considering a motion to dismiss, the court must accept as true the allegations of

23 the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

24 Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

25 motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

26 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume

4

1  that general allegations embrace those specific facts that are necessary to support the claim.'"

2  NOW, 510 U.S. at 256, 114 S. Ct. at 803, quoting Lujan v. Defenders of Wildlife, 504 U.S. 555,

3  561, 112 S. Ct. 2130, 2137 (1992).  Moreover, pro se pleadings are held to a less stringent

4  standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596

5  (1972).

6         The court may consider facts established by exhibits attached to the complaint.

7  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also

8  consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d

9  1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other

10  papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir.

11  1986).  The court need not accept legal conclusions "cast in the form of factual allegations."

12  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

13         A pro se litigant is entitled to notice of the deficiencies in the complaint and an

14  opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See

15  Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

16         *Statute of Limitations*

17         The statute of limitations in § 1983 civil rights cases is governed by state law.

18  Wilson v. Garcia, 471 U.S. 261, 273-75, 105 S.Ct. 1938 (1985).  Because civil actions are best

19  characterized as actions for injuries to personal rights, federal courts borrow the statute of

20  limitations that applies to personal injury actions.  McDouglas v. County of Imperial, 942 F.2d

21  668, 672-74 (9th Cir. 1991).

22         Prior to January 1, 2003, California's statute of limitations for personal injury

23  actions was one year.  Cal. Code Civ. Proc. § 335.1 (West Supp. 2002).  Effective January 1,

24  2003, the new California statute of limitations for personal injury actions is two years.  Cal. Code

25  Civ. P. § 335.1 (West Supp. 2004).  California law also applies for the tolling of the statute of

26  limitations for a period of up to two years based on the disability of imprisonment for prisoners

1  serving less than life terms.  Cal. Code Civ. P. § 352.1.  The new statute of limitations does not

2  apply retroactively to claims that accrued prior to January 1, 2003.  <u>Jones v. Blanas</u>, 393 F.3d

3  918, 927 (9th Cir. 2004).

4          Federal law determines when a claim accrues, and "[u]nder federal law, a claim

5  accrues when the plaintiff knows or has reason to know of the injury which is the basis of the

6  action."  <u>Maldonado v. Harris</u>, 370 F.3d 945, 955 (9th Cir. 2004).  In the instant case, plaintiff

7  became aware of the at-issue policy when he was incarcerated in December 2002.  Therefore, the

8  one year statute of limitations applies to plaintiff.

9           Under the continuing violations doctrine, "a plaintiff who shows that a policy and

10 practice operated at least in part within the limitations period satisfies the filing

11 requirements...even if some or all of the events evidencing its inception occurred prior to the

12 limitations period."  <u>Green v. City of Los Angeles Superintendent of Schools</u>, 883 F.2d 1472,

13 1480 (9th Cir. 1989).  For continuing violations, the statute of limitations does not begin to run

14 until that conduct ends.  <u>Flowers v. Carville</u>, 310 F.3d 1118, 1126 (9th Cir. 2002).

15         In the instant case, the continuing violations doctrine is applicable because

16 plaintiff alleges that he was continuously subject to the allegedly unconstitutional policy from

17 December 2002 to December 2003. Therefore, the statute of limitations began to run in

18 December 2003.  Plaintiff had three years from that date, i.e. one year limitations period and two

19 years of tolling, to file a timely action.  This action, filed February 10, 2006, was filed within that

20 three year period.

21         In the motion to dismiss, defendants observe that in the complaint, plaintiff

22 alleges that he was a pretrial detainee at the Sacramento County Jail on April 18, 2000, and

23 subject to the identical policy at issue in the instant case.  Complaint, ¶ 18.  Based on this

24 allegation, defendants argue that the statute of limitations ran from April 2000 and that the

25 instant action is not timely.

26 \\\\\

1    Defendants' argument that the limitations period ran on April 18, 2000, is without

2    merit.  The instant action challenges enforcement of the at-issue policy during a period of

3    incarceration separate and distinct from the time plaintiff was incarcerated at the jail in April

4    2000.  While plaintiff may be barred by the statute of limitations from seeking damages for the

5    enforcement of the policy during his April 2000 incarceration, the statute of limitations does not

6    bar the instant action.

7    *Qualified Immunity*

8    Defendants argue that defendant Blanas is entitled to qualified immunity.   Under

9    Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001) the court takes a two step approach in

10   determining whether a defendant is entitled to qualified immunity.  First, the court determines

11   whether defendant Blanas violated plaintiff's constitutional rights.  Saucier, 533 U.S. at 201, 121

12   S.Ct. 2151.  If so, then the court determines whether that right was "clearly established" such that

13   "it would be clear to a reasonable officer that his conduct was unlawful in the situation he

14   confronted."  Id. at 201-02, 121 S.Ct. 2151.  If the court determines at the first step that no

15   constitutional violation occurred, the qualified immunity inquiry is at an end.  Id. at 201, 121

16   S.Ct. 2151.

17   At all relevant times, it was clearly established that racial discrimination against

18   prisoners, including pretrial detainees, was unconstitutional.  Wolff v. McDonnell, 418 U.S. 539,

19   556, 94 S.Ct. 2963 (1974).  Accordingly, the court next considers whether the law was clearly

20   established regarding use of race as a factor in housing decisions such that a reasonable jail

21   official would know that his conduct was unlawful.

22   On February 25, 2003, the Ninth Circuit decided Johnson v. California, 321 F.3d

23   791 (9th Cir. 2003), reversed by Johnson v. California, 543 U.S. 499, 125 S.Ct. 1141 (2005).  In

24   this case, an African American inmate alleged that a prison policy of using race as a factor in

25   assigning a new inmate's initial cell mate at California Department of Corrections and

26   Rehabilitation reception centers violated the Equal Protection Clause.  Inmates are housed in the

7

reception centers for 60 days.  321 F.3d at 794.  Applying the factors set forth in <u>Turner v. Safley</u>, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987) the Ninth Circuit found that this racial segregation was not unconstitutional.  In 2005 the Supreme Court reversed and remanded <u>Johnson</u>, finding that strict scrutiny was the proper standard for review.  <u>Johnson v. California</u>, 543 U.S. 499, 125 S.Ct. 1141 (2005).

In <u>Johnson</u>, the Ninth Circuit was careful to distinguish the facts of that case from other cases holding prison racial discrimination unconstitutional:

> Unlike in <u>Lee</u>, <u>Wyandotte County</u>, and <u>McClelland</u>, where the prison officials segregated the prison into black and white cell blocks or tanks under the guise of promoting racial harmony, the CDC is integrated in full.  Inmates of all races work together, eat together, and use the yard together.  This case simply does not involve a similarly broad segregation policy.  Moreover, unlike the permanent policies in place in all of the aforementioned cases, this is a temporary arrangement, lasting only 60 days, which, according to the CDC, permits it to learn more about the inmates before assigning them to a cell on a more permanent basis...

321 F.3d at 797 no. 5

The facts of plaintiff's case fall somewhere between those of <u>Johnson</u>, <u>Lee</u>, <u>Wyandotte County</u> and <u>McClellend</u>.  Unlike <u>Johnson</u>, plaintiff is claiming that defendants had a policy of housing inmates of the same race together for more than a short period of time.  Nevertheless, the circumstances facing an administrator of a county jail are more like those of <u>Johnson</u> than an established prison setting.  Obviously, county jails, especially those involved in housing prisoners awaiting trial, face on a daily basis a large inflow and outgo of prisoners.  There are daily new arrests and daily releases on bail and otherwise.[1]  Many persons initially incarcerated may well spend less than 60 days incarceration awaiting trial.  If prison officials in a "introductory" prison setting faced special circumstances in the housing of inmates, jail officials

---

[1] The undersigned can take judicial notice of his own criminal calendar, which in duty months is substantial.  The undersigned alone, on a busy day involving many cases and multiple defendants within the many cases, can order detained in the Sacramento County Jail upwards of 10-20 prisoners.  The undersigned often orders a release of prisoners after an initial detention on account of presentation of information which warrants release on conditions.  And, this is just one federal calendar, a small percentage of the defendants processed by state courts.

1  may have no immediate idea of how to classify the dangerousness of a certain newcomer on a

2  moment's notice.  Gang affiliation and other dangerous circumstances may take some time to

3  figure out.  While certain prisoners may spend lengthy incarcerations (a year or more), and some

4  defendants may be sentenced to a year in county jail, in a county jail awaiting trial, the mix of

5  these prisoners and the ever-changing composition of the transitory prisoners make the jail

6  setting more akin to <u>Johnson</u> than the other cases.  That being said, given the legal landscape in

7  2003 concerning the segregated housing of prisoners in a transitory jail setting was not well

8  established in terms of the standard by which such segregation should be judged.  Former Sheriff

9  Blanas is entitled to qualified immunity.

10          Accordingly, IT IS HEREBY ORDERED that a hearing will be scheduled

11  regarding whether plaintiff exhausted his administrative remedies following the district court's

12  consideration of these findings and recommendations;

13          IT IS HEREBY RECOMMENDED that defendants' July 12, 2007, motion to

14  dismiss on grounds that this action is barred by the statute of limitations and that defendant

15  Blanas is entitled to qualified immunity be granted.

16          These findings and recommendations are submitted to the United States District

17  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

18  days after being served with these findings and recommendations, any party may file written

19  objections with the court and serve a copy on all parties.  Such a document should be captioned

20  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

21  shall be served and filed within ten days after service of the objections.  The parties are advised

22  that failure to file objections within the specified time may waive the right to appeal the District

23  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

24  DATED: 01/28/08

                                 /s/ Gregory G. Hollows

25

                                UNITED STATES MAGISTRATE JUDGE

26  wim289.mtd